## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 10-60102-CR-ZLOCH/ROSENBAUM

UNITED STATES OF AMERICA,

        Plaintiff,

v.

STANLEY WILSON,
a/k/a "Bird,"

        Defendant.

_____/

### REPORT AND RECOMMENDATION

This matter is before the Court upon Defendant Stanley Wilson's Motion to Sever [D.E. 81] upon referral for report and recommendation by the Honorable William J. Zloch.  *See* D.E. 89.  The Court has carefully considered Defendant's Motion, all filings in support thereof and in opposition thereto,  and the entire record, and is otherwise duly informed on the premises.  Additionally, the Court has had the benefit of argument of counsel at the hearing held in this matter on June 1, 2010.  At the hearing, the Court announced its decision recommending denial of Defendant's Motion.  This Order memorializes the Court's decision and the reasons for it.

### I. Background

On March 30, 2010, a federal grand jury returned an Indictment against Defendant Stanley Wilson ("Defendant" or "Wilson") and four others, including Johnny Saintil, Michael Defrand, Maritza Rodriguez, and Latanya Ned.  Without identifying any victims of the alleged conspiracy, the Indictment claims that from "at least as early as September 2009, and continuing through on or about

March 16, 2010," Wilson conspired with his co-defendants to traffic in persons under the age of 18 for purposes of causing such persons to engage in a commercial sexual act and knowing that force would be used to cause persons to engage in a commercial sexual act, in violation of 18 U.S.C. § 1594(c) (Count 1).  *See* D.E. 16 at 1.

Additionally, the Indictment charges Defendant and co-defendant Latanya Ned with two counts of trafficking in persons knowing that force would be used to cause such persons to engage in a commercial sexual act, in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1), and 2.  These counts identify "D.C." (Count 6) and "J.C." (Count 7), respectively, as the alleged victims and allege that Defendant committed the offenses "[f]rom in or around November 2009, and continuing through in or around January 2010" with respect to Count 6, and "[f]rom in or around July 2009, and continuing through on or about March 16, 2010," as the Indictment regards Count 7.  *See* D.E. 16 at 4-5.

Two of the remaining four counts of the Indictment assert that co-defendants Johnny Saintil and Maritza Rodriguez trafficked in persons under the age of 18 for purposes of causing such persons to engage in a commercial sexual act and knowing that force would be used to cause such persons to engage in a commercial sexual act, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(2), and 2 (Counts 2 and 3).  D.E. 16 at 2-3.  Count 2 charges that the offense occurred "[f]rom in or around September 2009, and continuing through on or about October 26, 2009," while Count 3 alleges the time as being "[f]rom in or around September 2009, and continuing through on or about October 1, 2009."  *Id.*  The other two counts charge co-defendant Michael Defrand with the same offense, but different victims (Counts 4 and 5) and allege that the conduct at issue occurred "[f]rom in or around September 2009, and continuing through on or about October 14, 2009" (Count 4), and "[f]rom in or around September 2009, and continuing through on or about March 16, 2010" (Count

5).  *Id.* at 3-4.  All four of these counts identify victims different from those named in the charges

against Defendant Wilson and different from each other.  *See id.* at 2-5.

Following his initial appearance and arraignment in this case, Defendant Wilson filed his

pending Motion for Pretrial Hearing.  In this Motion, Defendant recognizes that the Indictment

alleges that Defendant was involved in a conspiracy in Count 1.  D.E. 82 at 1.  Thus, Defendant

reasons that the United States will seek to introduce at trial, pursuant to Rule 801(d)(2)(E), Fed. R.

Evid., out-of-court statements by alleged co-conspirators against Defendant.  *Id.* at 1-2.  Because

Wilson argues, some of the offense dates asserted in Counts 6 and 7 against him fall outside the

period of the conspiracy alleged in Count 1 of the Indictment, Wilson contends that the Court should

apply "the procedures mandated by *United States v. James*," 590 F.2d 575 (5th Cir.) (*en banc*), *cert.*

*denied*, 442 U.S. 917 (1979), "in order to determine whether the Government is able to show by

substantial evidence, independent of the conversations themselves, that these conspiracies existed

and that the Defendant was a member thereof, and that the declarations were made during the course

and in furtherance of said conspiracy."  D.E. 82 at 2.  In further support of his request, Defendant

argues that "[a] pre-trial determination of these issues might very well indicate the necessity of

granting this Defendant a severance from the trial of the remaining co-defendants . . . ."  *Id.*

In response to Defendant's Motion, the United States proffers,

> The indictment arises from the defendants' membership in a criminal
> organization called "PTP."  The organization prostituted adult and
> minor females out of national and international hotel chains in
> Broward County by advertising the prostitutes on the [I]nternet site
> backpage.com.   The group also shared resources, including
> computers, condoms, and the prostitutes themselves, and helped each
> other with [I]nternet advertising and surveillance.
>
> The members of PTP included pimps and head prostitutes, referred

> to as "bottoms," who controlled the day-to-day activities of the
> prostitutes. Wilson, Saintil, and Defrand were pimps; Rodriguez and
> Ned worked as "bottoms." Each pimp and "bottom" had, throughout
> the conspiracy, numerous prostitutes under their control. Specifically,
> D.C. and J.C., among others, worked for Wilson and Ned; V.J. and
> S.M., among others, worked for Saintil and Rodriguez; and T.H. and
> T.B., among others, worked for Defrand.

D.E. 100 at 2. The Government further acknowledges that it expects to offer at trial statements made

by Wilson's alleged co-conspirators during the course of and in furtherance of the conspiracy, but

it notes that it has already provided Defendant with all such statements during the course of

discovery. *Id.*

On June 1, 2010, the Court held a hearing on Defendant's Motion. At the hearing, the United

States proffered that Defendant Wilson and co-defendant's Saintil and Defrand were "pimps" in

PTP, which stands for "Please Talk Paper" and other phrases. According to the Government, PTP's

purpose was to prostitute adult and minor females in Broward County and sometimes in Miami-Dade

county. Wilson, Saintil, and Defrand each worked with a particular prostitute (termed "bottoms" by

Defendants), who controlled the day-to-day activities of the prostitutes working for each of the

respective "pimps."

The United States further proffered that the alleged victims identified by initials in Counts

2, 3, 4, and 6 of the Indictment have all identified Wilson as a member of PTP, along with the

specific "pimps" for whom they allegedly worked. In addition, the United States reported that

Wilson, Saintil, and Defrand all shared resources in furtherance of PTP's objective. More

specifically, the Government stated that the alleged victims would testify that Defendants provided

each other with condoms to give to the prostitutes and that they "shared" prostitutes and computers,

which they used to advertise the services of PTP's prostitutes. According to the United States,

-4-

Wilson is the subscriber to the backpage.com advertisements featuring not only the prostitutes identified by initials in Counts 6 and 7 of the Indictment, but also other prostitutes who reported to Saintil and Defrand as a part of the alleged PTP conspiracy. The Government also proffered that the alleged victims would testify that all of the Defendants stayed in the same hotels, providing counter-surveillance for each other and assisting in the detection of law enforcement during prostitution business. Thus, the Government argued, all of the Defendants used the same *modus operandi* with regard to their alleged prostitution activities, including advising recruits of "the rules" once they were brought into PTP, advertising services on backpage.com, providing condoms, staying in specific hotels, providing counter-surveillance for each other, and assisting in the detection of law enforcement during prostitution business.

When asked about the fact that one of the substantive counts against Wilson begins prior to the date of commencement of the conspiracy count and both counts end before the conspiracy count does, the United States explained that it believes that Saintil, Defrand, and Rodriguez were involved in the conspiracy as early as the earliest date listed in the substantive counts against Wilson, but it does not have evidence to prove such a contention beyond a reasonable doubt. Consequently, it charged the conspiracy beginning "at least as early as September 2009." Nevertheless, the Government asserted, regardless of whether it can prove the existence of the conspiracy alleged in Count 1 prior to September, 2009, as previously described, testimony from the alleged victims will show that at least as of September, 2009, Wilson, Defrand, Saintil, Rodriguez, and Ned were involved in the alleged conspiracy.

In response to Defendant Wilson's objection that he (as well as Saintil and Defrand) was incarcerated during a portion of the conspiracy, the Government proffered that recordings of

conversations that Wilson had from jail show that Wilson remained involved in the activities of PTP, giving directives to Ned and the alleged prostitutes identified by initials in Counts 6 & 7. These instructions allegedly related to what to do and how to work, including directions on posting advertisements for prostitution services and on collecting money from the alleged prostitutes. In one such conversation, the Government explained, Defendant ordered a third alleged prostitute to physically assault the alleged victim identified in Count 7. According to the Government, while the assault occurred, the recording reflects, Defendant listened.

Finally, with respect to Defendant's contentions that the Government had not provided any information indicating that using minors in furtherance of the alleged objectives of PTP was reasonably foreseeable, the United States advised the Court that the alleged victim identified by her initials in Count 7 was under the age of 18 for a portion of the time of the offense alleged in that count. Defendant further proffered that this individual was also in a consensual relationship with Defendant.

## II.  Analysis

### A.  Rule 8, Fed. R. Crim. P.

The Court begins its analysis by considering whether Counts 1, 6, and 7 of the Indictment are properly joined with each other and with the other counts of the Indictment. Rule 8(a), Fed. R. Crim. P., governs joinder of offenses. It provides, in relevant part, "The indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." The word "transaction" "'may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their

-6-

logical relationship.'" *United States v. Park*, 531 F.2d 754, 761 (11th Cir. 1976) (quoting *Moore v.

N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)).  As for whether crimes are "connected" for purposes

of Rule 8(a), charges satisfy this prong of Rule 8(a) if "the proof of one crime constitutes a

substantial portion of the proof of the other."  *United States v. Montes-Cardenas*, 746 F.2d 771, 776

(11th Cir. 1984) (citations omitted).  When a court applies the standards articulated in Rule 8, the

court "broadly construe[s] [Rule 8] in favor of the initial joinder.'"  *United States v. Dominguez*, 226

F.3d 1235, 1238 (11th Cir. 2000) (quoting *United States v. Weaver*, 905 F.2d 1466, 1476-77 (11th Cir.

1990)).

> Rule 8(b) sets for the requirements for joinder of defendants.  It provides,

>> The indictment . . . may charge 2 or more defendants if they are
>> alleged to have participated in the same act or transaction, or in the
>> same series of acts or transactions, constituting and offense or
>> offenses.  The defendants may be charged in one or more counts
>> together or separately.  All defendants need not be charged in each
>> count.

Fed. R. Crim. P. 8(b).  With regard to the propriety of joinder of offenses under Rule 8(b), an

indictment may properly charge all of the defendants with conspiracy but only some of the

defendants with substantive crimes arising out of that conspiracy.  *United States v. Weinrich*, 586

F.2d 481, 495 (5th Cir. 1978);[1] *United States v. DeLeon*, 641 F.2d 330, 337 (5th Cir. Apr. 2, 1981).

Moreover, where offenses are properly joined, a severance is not appropriate "merely to defuse the

probative impact of evidence of one's own guilt."  *United States v. McGruder*, 514 F.2d 1288, 1290

(5th Cir. 1975) (citation omitted).

> In the instant matter the Government has proffered that it intends to prove at trial that at least

---

[1]Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions
of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

a portion of each of the substantive acts alleged in Counts 6 and 7 of the Indictment occurred as part

of the conspiracy alleged in Count 1 of the Indictment.   As for the remaining counts of the

Indictment, the Government has similarly stated that it expects to show that the acts alleged in

Counts 2 through 5 against the co-defendants also occurred within the context of the conspiracy

alleged in Count 1.  The Government has further proffered evidence, as set forth previously, that, if

believed, would demonstrate the Government's claims in these regards.  As all of the substantive

counts in the Indictment are alleged to have constituted part and parcel of the conspiracy alleged in

Count 1, all of the counts in the Indictment are "connected" for purposes of Rule 8(a) and (b).

Consequently, the Court concludes that under Rule 8(a) and (b), Fed. R. Crim. P., Counts 1, 6, and

7 are properly joined with each other and with the other counts of the Indictment.

**B.  Rule 14, Fed. R. Crim. P.**

Nevertheless, although Rule 8 may permit counts satisfying the rule's standards to be joined,

Rule 14, Fed. R. Crim. P., empowers the district court to exercise its discretion to sever otherwise

properly joined counts when the court concludes that "the joinder of offenses . . . for trial appears

to prejudice a defendant or the government. . . ."  To determine whether a severance should be

granted, the trial court "must balance the right of the defendant to a fair trial against the public's

interest in the efficient and economic administration of justice."  *United States v. Simon*, 839 F.2d

1461, 1472 (11th Cir. 1988) (considering motion for severance of defendants).  In conducting this

analysis, the district court must grant a motion for severance only where denial would "'result[] in

compelling prejudice against which the district court [can] offer[] no protection.'" *United States v.*

*Dowd*, 451 F.3d 1244, 1249 (11th Cir. 2006) (quoting *United States v. Hersh*, 297 F.3d 1233, 1244

(11th Cir. 2002)).

-8-

Four types of prejudicial joinder can require a severance, although courts "rarely grant[]" severances on any of these bases:

(1)     Where the Defendants rely on mutually antagonistic defenses. . . .

(2)     Where one Defendant would exculpate the moving Defendant in a separate trial, but will not testify in a joint setting. . . .

(3)     Where inculpatory evidence will be admitted against one Defendant that is not admissible against the other. . . .

(4)     Where a cumulative and prejudicial "spill over" effect may prevent the jury from sifting through the evidence to make an individualized determination as to each Defendant. . . .

*United States v. Chavez*, 584 F.3d 1354, 1360-61 (11th Cir. 2009) (internal citations omitted).

Here, Defendant Wilson argues that the Court should sever Counts 6 and 7 from the remaining counts in the Indictment for purposes of trial, and further, that the Court should sever Count 1 from the remaining counts in the Indictment and from Counts 6 and 7, primarily on the fourth basis articulated. Additionally, Wilson asserts without elaboration that "the defenses of the Defendant in this case are unquestionably and completely antagonistic" and that "many of the co-defendants have given statements to law enforcement which further creates undue prejudice." D.E. 81 at 2.

In support of his contention that a joint trial will result in undue prejudice, Defendant Wilson asserts primarily that joining Counts 6 and 7 with Count 1 will prejudice Wilson because Counts 6 and 7 allege only coercion in furtherance of trafficking in persons for commercial sexual acts, while Count 1 purports to involve minors. Wilson further argues that because the dates of the substantive offenses alleged in Counts 6 and 7 begin prior to the commencement of the conspiracy alleged in

-9-

Count 1 and end before the concluding date of the conspiracy, the crimes alleged in Counts 6 and 7 did not constitute a part of the conspiracy and should be tried separately from the conspiracy.

In response, as noted in Section II, *supra*, at 4-6, the Government proffers that the substantive counts were, indeed, a part of the conspiracy, but the durations of Counts 6 and 7 do not line up exactly with the dates of the conspiracy because of proof problems establishing beyond a reasonable doubt the co-defendants' involvement in the conspiracy prior to the alleged start date of the conspiracy. According to the Government, however, even assuming, *arguendo*, that the conduct alleged in the substantive counts against Wilson began prior to the beginning of the conspiracy, it, nonetheless, became a part of the conspiracy once the conspiracy began. In furtherance of this contention, the Government has alleged that testimony from the alleged victims will show that at least as of September, 2009, Wilson, Defrand, Saintil, Rodriguez, and Ned were involved in the alleged conspiracy. More specifically, the Government states that the alleged victims would testify that Defendants provided each other with condoms to give to the prostitutes and that they "shared" prostitutes and computers, which they used to advertise the services of PTP's prostitutes. According to the United States, Wilson is the subscriber to the backpage.com advertisements featuring not only the prostitutes identified by initials in Counts 6 and 7 of the Indictment, but also other prostitutes who reported to Saintil and Defrand as a part of the alleged PTP conspiracy. The Government also proffers that the alleged victims would testify that all of the Defendants stayed in the same hotels, providing counter-surveillance for each other and assisting in the detection of law enforcement during prostitution business. Thus, the Government argues, all of the Defendants used the same *modus operandi* with regard to their alleged prostitution activities, including advising recruits of "the rules" once they were brought into PTP, advertising services on backpage.com, providing condoms,

staying in specific hotels, providing counter-surveillance for each other, and assisting in the detection of law enforcement during prostitution business.

As for Defendant's concern about alleged prejudice overflowing from the allegation that the conspiracy used under-age females, but the substantive counts against Wilson do not refer to under-age females, the Government offers that the alleged victim identified by initials in Count 7 was underage during a portion of the alleged offense.  It further relies upon its proffer regarding the expected testimony of the alleged prostitutes in the ring, as set forth above.  Similarly, regarding concerns raised by Wilson that the substantive crimes alleged against other defendants in Counts 2 through 5 were not a part of the conspiracy, the Government points to the same proffer, relying on the expected testimony of the alleged victims of the conspiracy to demonstrate that all of the substantive acts set forth in the Indictment occurred within the context of the conspiracy alleged in Count 1.

Here, should the evidence prove what the Government asserts that it expects the evidence will prove, all seven counts are not only properly joined, but the public's interest in the efficient and economic administration of justice weighs heavily in favor of a single trial.  Indeed, a preference exists in the federal system for joint trials of defendants who are indicted together.  *Zafiro v. United States*, 506 U.S. 534, 537 (1993).  The Supreme Court has recognized that "[j]oint trials 'play a vital role in the criminal justice system.'" *Id.* (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)).  In this regard, they promote efficiency and "'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Id.* (quoting *Richardson*, 481 U.S. at 210).  If the Government can establish what it expects to show, all six of the substantive counts are effectively (multiple) overt acts in furtherance of the conspiracy.  As such, trial of all of the counts together will not result in

-11-

undue or "spill over" prejudice, and, in the absence of another compelling reason for not doing so, all of the counts should be tried together.

Next, the Court considers Defendant's other two bases for a severance – antagonistic defenses and statements to law enforcement by co-defendants.  Although the Eleventh Circuit has held that severance is "compelled" if the jury, "'in order to believe the core of the testimony offered on behalf of that defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant . . . ,'" *United States v. Gonzalez*, 804 F.2d 691, 695 (11th Cir. 1986) (quoting *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir. Unit B 1981)), the Supreme Court has subsequently cautioned that  a simple showing of mutually antagonistic defenses is not prejudicial *per se*.  *Zafiro v. United States*, 506 U.S. at 538.  Moreover, even when prejudice is shown, severance is not necessarily required.  *Id.* at 539.  In this regard, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."  *Id.* at 540 (citations omitted).  Determining what, if any, relief is to be granted where prejudice is shown, falls within the district court's sound discretion.  *Id.* (citing *United States v. Lane*, 474 U.S. 438, 449 n.12 (1986); *Opper v. United States*, 348 U.S. 84, 95 (1954)).

In undertaking this analysis, the Court keeps in mind that "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Id.*  As the Eleventh Circuit recently observed, "Since the 1993 decision of the Supreme Court in *Zafiro*, . . . rejecting the concept that mutually antagonistic defenses are prejudicial *per se*, . . . there has been only one decision of [the Eleventh Circuit] finding error in a district court's denial of a motion for severance,"

-12-

and the one reversal cited by the Eleventh Circuit did not make its finding on the basis of antagonistic defenses. *Chavez*, 584 F.3d at 1360 n.5 (citing *United States v. Cobb*, 185 F.3d 1193 (11ᵗʰ Cir. 1999) as holding that a joint trial effectively denied one of the defendant's right of access to exculpatory testimony by the co-defendant who would have been available as a witness at a separate trial); *see also Zafiro*, 506 U.S. at 538 ("The low rate of reversal [of district courts denying severance motions on the basis of antagonistic defenses] may reflect the inability of defendants to prove a risk of prejudice in most cases involving conflicting defenses.").

In the case at hand, Defendant Wilson asserts that "the defenses of the Defendant . . . are unquestionably and completely antagonistic." Construing this contention as also alleging that the defenses of the various defendants are antagonistic,[2] the Court notes that Defendant has not explained how the defenses are antagonistic. Yet, he bears the burden of establishing compelling prejudice justifying a severance. *See United States v. Bane*, 2010 WL 882913, *2 (Mar. 5, 2010); *United States v. Flores*, 2007 WL 2904109, *65 (N.D. Ga. Sept. 27, 2009). Nor is it immediately obvious to the Court that the defenses of Wilson and his co-defendants will necessarily be antagonistic. Under these circumstances, Defendant has not met his burden, and the severance should be denied.

With respect to Wilson's contention that "many of the co-defendants have given statements to law enforcement which further creates undue prejudice," again, Defendant has not identified any particular statements that allegedly implicate Defendant, which were given to law enforcement by a co-defendant. Thus, Defendant has not carried his burden of demonstrating a problem under

---

[2]Wilson's argument that his defenses for Counts 6 and 7 are antagonistic to his defenses for Count 1 cannot serve as the basis for a severance where the counts are otherwise properly joined under Rule 8(b). *Zafiro*, 506 U.S. at 540.

*Bruton v. United States*, 391 U.S. 123 (1968) (co-defendant's statement implicating another co-defendant may not be used in a trial against the implicated co-defendant if the declaring co-defendant does not testify and subject himself to cross-examination).  Accordingly, severance on this basis is not supported by the existing record.

### III.  Conclusion and Recommendation

For the foregoing reasons, I respectfully recommend that the Court deny the Motion to Sever. The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William J. Zloch, United States District Judge.  Failure to file objections timely shall bar the parties from a *de novo* determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc*); 28 U.S.C. § 636(b)(1).

**FILED AND SUBMITTED** at Fort Lauderdale, Florida, this 5th day of June, 2010.

ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc:    Hon. William J. Zloch
        Counsel of Record

-14-