UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-60102-CR-ZLOCH/ROSENBAUM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

STANLEY WILSON,
a/k/a "Bird,"

    Defendant.
              /

## ORDER

This matter is before the Court upon Defendant Stanley Wilson's Motion *in Limine* [D.E. 121], upon referral for report and recommendation by the Honorable William J. Zloch. *See* D.E. 122. The Court has carefully considered Defendant's Motion, all filings in support thereof and in opposition thereto, and the entire record, and is otherwise duly informed on the premises. Additionally, the Court has had the benefit of argument of counsel at the hearing held in this matter on July 26, 2010. The Court now denies Defendant's Motion for the reasons stated below.

### I. Background

On June 15, 2010, a federal grand jury returned a Superseding Indictment against Defendant Stanley Wilson ("Defendant" or "Wilson") and four others, including Johnny Saintil, Michael Defrand, Maritza Rodriguez, and Latanya Ned. The Superseding Indictment charges Defendant Wilson with one count of conspiracy to sex-traffic minors and to sex-traffic by force, in violation of 18 U.S.C. § 1594(c), and two counts of sex-trafficking by force, in violation of 18 U.S.C. §

1591(a). One count of sex-trafficking by force identifies an alleged victim with the initials "D.C.," while the other refers to an alleged victim with the initials "J.C."

According to the Government, the alleged prostitution ring worked in the following manner:

> This case arises from Wilson's membership in a criminal organization calling itself Please Talk Paper ("PTP"). The organization prostituted adult and minor females out of national and international hotel chains in Broward County by advertising on the [I]nternet site backpage.com. The group also shared resources, including computers, condoms, and the prostitutes themselves, and helped each other with [I]nternet advertising and avoiding detection by law enforcement.
>
> During the time he was involved with PTP, Wilson had several prostitutes working directly for him, including D.C. and J.C. A co-defendant, Latanya Ned, worked directly for Wilson by helping him run the day-to-day activities of his "business." Wilson and Ned regularly advertised D.C. and J.C. on backpage.com, and discussed advertising D.C. and J.C. on other [I]nternet sites. Wilson also regularly assaulted and threatened both D.C. and J.C.

D.E. 124 at 1-2.

On June 6, 2010, Defendant Wilson filed his pending Motion *in Limine* [D.E. 121]. In this Motion, Wilson seeks to preclude the Government from introducing in its case in chief recordings of telephone calls that Defendant made while he was incarcerated in the Broward County Jail. As a basis for this relief, Defendant asserts,

> The calls are generally rambling conversations with friends that contain irrelevant information that are not probative of any of the issues to be decided in this case. Furthermore, pursuant to Fed. R. Evid. 403, any possible probative value would clearly be substantially outweighed by the danger of unfair prejudice resulting from the introduction of the conversations which include street talk, profanity[,] and casual conversation of a nature and kind which is more likely to be misleading than have probative value.

D.E. 121 at 1, ¶ 2. Defendant does not further detail any specific content of the recordings to which

he objects.

The United States responds by confirming its intention at this time to seek to introduce portions of sixteen recorded telephone calls involving Defendant Wilson that took place between December 9 and 28, 2009.[1]  According to the Government,

> The calls evidence directly Wilson's sex[-]trafficking activities and corroborate information provided by witnesses.  For example, the calls include the following:
>
> • Discussions between Wilson and Ned concerning advertising the prostitutes working for them on backpage.com and other websites.
>
> • Discussions between Wilson and Ned concerning moving the prostitutes to different hotels[] and paying hotel bills by the week to save money.
>
> • Discussions between Wilson and Ned concerning how much money the prostitutes made for Wilson[] and how business was "slow."
>
> • Orders from Wilson that if business was slow from the [I]nternet, the prostitutes should be "gettin' money walking" because "long as it[']s cars on the road[,] it[']s money in the world."
>
> • During a series of calls on December 10, 2009, Wilson ordered another prostitute working for him to beat J.C. because she was talking with men without having them pay her for sex.  The other prostitute beat J.C. while Wilson listened on the phone.
>
> • Orders from Wilson that the prostitutes working for him had to ask his permission to "go out[]" and that the prostitutes don't get "off days" because, according to Wilson, "my phone

---

[1]The Government states that on July 9, 2010, it provided Defendant with a draft exhibit list identifying each of the sixteen recordings.  Although the Government's Response indicates its current intention to rely upon these sixteen recordings, it further notes that "[t]his list may be pared down even further as trial approaches."  D.E. 124 at 2 n.1.

> ring any time of the night, in the morning, anytime[,] and I ain't gonna miss no money."

- Repeated threats of physical harm to the prostitutes working for Wilson.

- Statements from Wilson explaining why he was so "hard" on the prostitutes working for him, including[,] "Cause I gotta be hard on y'all. I gotta be hard on both of ya'll. I can't go light. If I go light, damn, what kind of money you gonna make[?] I don't want no light money."

D.E. 124 at 2-3.

This Court held a hearing on Wilson's Motion on July 26, 2010. During the hearing, Defendant suggested that the recording in which Defendant allegedly instructed someone to beat an alleged prostitute was irrelevant because, in actuality, the person supposedly directed to inflict the beating effectively did so of her own volition because both she and the alleged victim were both mothers of Defendant's children. The Government provided the Court with a copy of the transcript of the recording in question, which the Court reviewed after the hearing. Although the Court reviewed the entire transcript, the most significant portions appear below:

> Defendant: Go the BG's and park back in right there. Right where Spice was getting her hair done, go to the BG's and park right there. And give Spice the phone. I'm funda[2] make Tonya beat this hoe' ass right now. So she don't play wit me. Cause don't nobody wanna hit her. I ain't out to hit her. I gotta put somebody on her that I raised that I know soon as I say handle that she just go come straight downstairs, let down the

---

[2]The term "funda" appears throughout the transcript and appears to mean "going to." As the Court has not listened to the actual recordings, however, the Court cannot confirm this. Although in quoting these transcripts the Court does not use the signal "sic" to denote that the quotation is accurate despite the non-traditional spellings apparently set forth during the transcription and the non-traditional usage of the speaker, the quoted language is quoted accurately from the transcripts provided by the Government.

-4-

window and she go abaa, abaa, listen don't play wit his life. I might not be wit'em right now. This and that and that and that but man this hoe' gotta know she could git whupped when I'm in jail. He don't wanna do it. I don't know what the case it is whatever it is. I'll whip her when I git out. But f . . . that. I need this hoe' whipped right now. Cause I'm made. And give Spice the phone. Go to the BG's man.

\* \* \* \* \*

Ya'll funda go back there right. I'm funda, I want you to go knock on the door and take the um, red (unintelligible) I'm funda make they red girl beat they ass for playin wit me. So when you take her the phone. Just stand back for a lil minute. She go beat her up, beat her up, beat her up. Then y'all leave. After she whip ass in the car, then I'm a tell her to go in the house and y'all just go leave. Don't say nothin' just stay on the phone wit me till y'all git to the BG's. She gotta she ain't funda be playing wit me dog. She jumpin out in my life, you life and Tonya life by talkin' to n . . .s for nothin'. You feel me. Go over to the BG's right now. . . .

\* \* \* \* \*

I just need to talk to this red girl, see, see I need somebody there that's go do what I say do. I'm steady tellin' Delano, to punch her in her . . . , he steady tryin to tell me oh this and that, and dah, dah, dah, oh dah, dah, dah. I don't wanna hear that . . . . I'm go punch him in his . . . when I get out.

\* \* \* \* \*

. . . and tell Tonya after she beat her, I'm funda talk to her. I'm from talk to Tonya. I'm funda tell Tonya whip her. And I'm funda let you and Tonya work the day and have the day at Tonya house. She off today. She do nothin'. She don't talk to nobody, she don't do nothin'. She just sit at the house.

* * * * *

She downstairs in the car right now.  Listen I'm a tell you what I want you to do.

* * * * *

I want you to go downstairs and beat her as bout two minutes and then Tonya go take her to her house and then Tonya go come back and git you and take you and Spice to the room and let you and Spice work.

* * * * *

I just need you to go downstairs, beat her up right quick, let her know don't be playin wit me.  Don't play wit this (unintelligible) cause he, man listen, she tryin to tell me cause Spice like you. . . .

* * * * *

. . . I gotta let her know listen even though I'm in jail . . . I can touch you bitch. . . .

* * * * *

Transcript of Call #3, BSO9-06-5711.  The transcript continues in much the same fashion over a number of pages.

Also at the hearing, Defendant clarified that if the Court found the recordings to contain any relevant evidence, he sought only to preclude the playing of portions of the recordings dealing with crimes not charged in the Superseding Indictment (such as drug and gambling crimes, for example). The Government, in response, indicated that it did not intend to play any such segregable portions of the recordings at trial, and, thus, agreed to redact the recordings accordingly.  Towards that end, the Court directed Defendant to identify for the Government by August 3, 2010, all parts of the recordings that it alleges are segregable and address non-indicted crimes.  The United States will

then review those portions of the recordings to see whether it will agree to redact the challenged parts. If the Government is not in agreement that any of the challenged portions should be redacted, it will specify its position to Defendant by August 10, 2010.

## II. Analysis

As Defendant challenges the admissibility of the recordings on the basis that they are not relevant, the Court begins by reviewing the definition of "relevant evidence." Rule 401, Fed. R. Evid., defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Applying these concepts to the revealed portions of the recordings, this Court finds that the disclosed parts of the recordings easily satisfy the definition of "relevant evidence" set forth by Rule 401, Fed. R. Evid. First, the Court has reviewed the transcript of Call #3 and concludes that the Government's description of it is accurate. Defendant does not challenge the Government's description of any of the other recordings. Second, as the content of all of the recordings is summarized by the Government, the recordings, if believed, tend to render it more likely that Defendant Wilson conspired to sex-traffic by force and that Defendant Wilson did, in fact, sex-traffic by force. These are, of course, material issues. As such, any evidence tending to make the existence of facts relating to them more or less likely meets the definition of "relevant evidence."

Because the evidence is relevant, the Court would next consider Defendant's original second objection: that the evidence should be ruled inadmissible under Rule 403, Fed. R. Evid. At the hearing, however, Defendant clarified that if the Court found the recordings to contain any relevant evidence, he sought only to preclude the playing of portions of the recordings dealing with crimes

not charged in the Superseding Indictment. Since the Government agreed that it did not intend to play such parts of the recordings at trial, the remainder of Defendant's original Motion *in Limine* is now moot and is denied as such.

### III.  Conclusion

For the foregoing reasons, Defendant Wilson's Motion *in Limine* [D.E. 121] is hereby **DENIED**.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 27th day of July 2010.

ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc:   Hon. William J. Zloch
      Counsel of Record